Roy J. NAPIER, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, Respondent.

No. 88–3079.

United States Court of Appeals, Fourth Circuit.

Submitted May 30, 1989.

Decided Sept. 1, 1989.

---

Roger D. Forman, Forman, Kanner & Crane, Charleston, W. Va., on brief, for appellant.

Donald S. Shire, Associate Sol., for Black Lung Benefits, Michael J. Denny, Counsel, for Appellate Litigation, Roscoe C. Bryant, III, U.S. Dept. of Labor, Office of Sol., Washington, D.C., on brief, for appellee.

Before RUSSELL and SPROUSE, Circuit Judges, and VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.

PER CURIAM:

Roy J. Napier petitions for review of the Benefits Review Board (BRB) decision upholding the finding of the Administrative Law Judge (ALJ) that Napier was not entitled to disability benefits because he failed to establish the existence of pneumoconiosis under 20 C.F.R. § 718.202(a)(1), or to establish total disability under 20 C.F.R. § 718.204(c)(1) through (4). Although we initially held that Napier's notice of appeal was untimely and thus insufficient to invoke this Court's review jurisdiction, we granted Napier's petition for rehearing on this issue. We now hold that because Napier's notice of appeal was filed on Monday following the sixtieth day after the Board's decision and order, a Saturday, his appeal is timely. *See* Fed.R.App.P. 26(a).

Napier contends on appeal that the ALJ erred in finding that he failed to establish the existence of pneumoconiosis or total disability due to pneumoconiosis. Specifically, Napier contends that the ALJ erred in overruling his objection to X-ray evidence admitted in violation of *Tobias v. Republic Steel Corp.*, 2 BLR 1–1277 (1981); failed to consider the relevant statutory

presumptions; and failed to apply the law as set forth in *Stomps v. Director, OWCP*, 816 F.2d 1533 (11th Cir.1987). While we agree the ALJ improperly failed to consider a medical report submitted on behalf of Napier in concluding that Napier failed to establish he suffered from pneumoconiosis, we nevertheless affirm, since there is substantial evidence in the record to support a finding that Napier was not totally disabled as a result of pneumoconiosis.

Because Napier filed his claim on March 28, 1983, the ALJ correctly considered whether he had established entitlement to benefits under the 20 C.F.R. Part 718 regulations. *See* 20 C.F.R. § 718.2. In order to establish entitlement to black lung disability benefits under the Part 718 regulations, a claimant must prove that he suffers from pneumoconiosis, that the pneumoconiosis arose out of his coal mine employment, and that he is totally disabled from pneumoconiosis. 20 C.F.R. §§ 718.202, 718.203, 718.-204.

Section 718.203 sets forth two methods by which a claimant may establish that his pneumoconiosis arose at least in part out of his coal mine employment. If a miner was employed for ten years or more in a coal mine, there arises a rebuttable presumption that the pneumoconiosis arose out of such employment. § 718.203(b). If a miner has less than ten years of coal mine employment, it shall be determined that such pneumoconiosis arose out of that employment only if competent evidence establishes such a relationship. § 718.203(c). In this case, the ALJ found, and the Director conceded, that Napier had eleven years of coal mine employment. Thus, if Napier could establish the existence of pneumoconiosis, it would be presumed that it arose out of his coal mine employment.

A finding of the existence of pneumoconiosis may be made on the basis of one of four methods: (1) chest X-rays conducted in accordance with quality standards of § 718.102; (2) a biopsy or autopsy conducted in accordance with the quality standards of § 718.106; (3) the presumptions contained in §§ 718.304, 718.305, or 718.306; or (4) a physician's finding, supported by a reasoned and documented medical opinion, that the miner suffers from pneumoconiosis. *See* § 718.202.

■ Napier's contention that a chest X-ray included in the record established the existence of pneumoconiosis and that the ALJ erred in crediting the negative re-readings of the X-ray by B-readers over the positive reading by a B-reader is without merit. The Board correctly noted that the prohibition against the re-reading of X-rays by a Board-certified or Board-eligible radiologist is not applicable to claims filed on or after January 1, 1982. *See* § 718.202(a)(1)(i). Napier's chest X-ray was originally read by Dr. Navani as 1/0 for pneumoconiosis, but was re-read by Drs. Sartent and Gaziano as negative for pneumoconiosis. Where an X-ray is originally interpreted as positive for pneumoconiosis by a B-reader, but then re-read as negative by two additional B-readers, there is a rational basis for the ALJ to resolve the conflicting interpretations and hold there is no X-ray evidence of pneumoconiosis. *See Winfrey v. Califano*, 620 F.2d 37 (4th Cir.1980). *Cf. Whitman v. Califano*, 617 F.2d 1055 (4th Cir.1980).

■ There was no autopsy or biopsy evidence as required by § 718.202(a)(2), and the presumptions of § 718.202(a)(3) were not available to Napier. The ALJ, however, failed to consider that a physician's report diagnosing pneumoconiosis may establish the existence of pneumoconiosis under § 718.202(a)(4). The record included a report from Dr. Paranthaman, diagnosing Napier as suffering from coal workers pneumoconiosis as well as heart disease after two myocardial infarctions. Dr. Paranthaman's diagnosis was based on a physical examination, an EKG, and medical and work histories. He also performed a blood gas study and a pulmonary function study, which were non-qualifying, and directed Dr. Navani to perform an X-ray, which Dr. Navani read as positive. Although a medical report diagnosing pneumoconiosis does not automatically establish the existence of pneumoconiosis, it "may" prove its existence. § 718.202(a)(4). For this reason, the ALJ erred in failing to consider whether

672

Dr. Paranthaman's medical report established the existence of pneumoconiosis.

■ To establish total disability, *i.e.*, inability to perform usual coal mine work or to engage in gainful employment requiring skills comparable to those of coal mine employment, a miner must establish one of the following: (1) a qualifying pulmonary function test; (2) a qualifying blood gas study; (3) medical evidence that demonstrates cor pulmonale with right sided congestive heart failure; or (4) where total disability cannot be shown under (1)–(3), a medical report that concludes that a miner's respiratory or pulmonary condition prevents the miner from engaging in his usual coal mine employment. § 718.204. The pulmonary function study and blood gas study of record were non-qualifying, and there was no evidence of cor pulmonale with right sided congestive heart failure. Although Dr. Paranthaman did state in his medical report that Napier was limited to walking 500 feet on level ground, climbing twelve steps, lifting forty pounds, and carrying twenty pounds, he noted that these limitations began after Napier had a heart attack in 1975, and became worse after the second heart attack. He further stated that Napier's "functional impairment is primarily related to [his] cardiovascular problem."

Based on the medical opinion and the objective medical tests, the ALJ properly concluded that the evidence of record failed to indicate that Napier suffered from a totally disabling respiratory impairment. At no point in his opinion did Dr. Paranthaman conclude that Napier's respiratory or pulmonary condition prevented him from engaging in his usual coal mine employment or comparable employment, as is required. § 718.204(c)(4). Rather, the medical report diagnosed cardiovascular problems as the primary cause of his impairment.

Napier's reliance on *Stomps v. Director, OWCP*, 816 F.2d 1533 (11th Cir.1987), as support for his argument that Dr. Paranthaman's medical conclusions establish a finding of total disability is misplaced. The record in *Stomps* included a doctor's conclusion that the claimant was unable to work due to his pulmonary disease. *Id.* at 1537. Moreover, in that case, the Eleventh Circuit held that the results of a qualifying blood gas study established total disability due to pneumoconiosis. *Id.* at 1538. Such evidence of total disability due to pneumoconiosis was simply not present in this case. The ALJ's finding that Napier failed to establish total disability due to pneumoconiosis is rational and supported by substantial evidence.

■ Since Napier must prove not only that he suffered all three elements to receive benefits, *i.e.*, that he suffered from pneumoconiosis arising out of his coal mine employment, but also that it caused total disability, the error committed by the ALJ in failing to consider whether Dr. Paranthaman's medical report established the existence of pneumoconiosis, is harmless. Accordingly, we affirm the Board's opinion.

AFFIRMED.